JAMES and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*October 31—November 27, 1962.*

For the appellants there were briefs by *Wickhem & Consigny,* attorneys, and *Gilbert D. Sedor* of counsel, all of Janesville, and oral argument by *Mr. John C. Wickhem* and *Mr. Sedor.*

For the respondent Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

HALLOWS, J.   This is a case involving a dual-purpose trip on the part of the employee and the only issue is whether there is credible evidence to sustain the finding Wise was performing services growing out of and incidental to his employment at the time of the accident. There is no issue raised that when Wise left Hayward and started toward Washburn he had two purposes in mind, one to drum up business and sell cars for his employer and the other a personal interest of arranging loans for the Indian students.

The thrust of the appellants' argument is that when Wise started back toward Red Cliff with the Indian students after completing the loan arrangements he was deviating from his employer's business. The commission claims Wise's returning to Red Cliff was not solely for personal reasons but also for a business purpose.

The Workmen's Compensation Act, sec. 102.03 (1) (f), Stats., provides an employee whose employment requires him to travel is deemed to be performing services growing out of and incidental to his employment at all times while on the trip excepting when engaged in a deviation for a private or personal purpose. The effect of this statute is to cast upon the one claiming a deviation the burden of proving either that portion of the trip was for personal purposes solely or any business purpose was incidental. Whether Wise deviated in going back toward Red Cliff through Bayfield or still was continuing the dual-purpose trip is a question of fact to be determined by the commission. If there is credible evidence in view of the whole record which sustains the commission's finding then it did not act without or in excess of its powers and its finding may not be set aside.

If Wise had a concurrent business purpose as well as a personal purpose during that portion of the trip when he was fatally injured that part of the trip cannot constitute a deviation. In *Barragar v. Industrial Comm.* (1931), 205 Wis. 550, 238 N. W. 368, this court adopted the rule of *Matter of Marks v. Gray* (1929), 251 N. Y. 90, 94, 167 N. E. 181, to the effect that in order to establish the liability of the employer in traveling cases by employees outside of the place of employment, the service of the employer must be a concurrent cause of the trip which would have been made although the personal motive had been canceled. It was pointed out in that case:

"If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

In such case whatever business purpose exists is incidental to and not a concurrent cause of the trip. However, when the work of the employee has a part in creating the necessity for the trip as in this case, service to the employer need be only a concurrent cause of the trip and need not be the sole, the primary, or the dominant cause. *Richardson v. Industrial Comm.* (1957), 1 Wis. (2d) 393, 84 N. W. (2d) 98; *Voswinkel v. Industrial Comm.* (1939), 229 Wis. 589, 282 N. W. 62; 1 Larson, Law of Workmen's Compensation, p. 244, sec. 18.13.

There are three items of testimony which would indicate Wise was on a dual-purpose trip when he started back from Washburn toward Bayfield. Wise had seen Mr. Dexter early that morning on his way to Red Cliff and had a tentative appointment, somewhat indefinite, that he would return either that afternoon before 2 o'clock or the next morning for the purpose of selling Dexter a car. Dexter had a tentative price for a car from an Ashland dealer but Wise had indicated he might be able to make a better price. Wise's statement he would come back before 2 o'clock or the following morning is consistent with the other facts. He was expected to work that Saturday afternoon at his employer's place of business in Hayward and if he worked Saturday afternoon he would have Sunday off. It may be inferred Wise intended to work at the garage that afternoon. If he did not have time to see Dexter by 2 p. m. and had worked at the garage, he would have been able to come back to Bayfield the following morning. Whether he could

see Dexter by 2 o'clock was unknown to Wise. He intended to arrange loans at Washburn for the Indian students, but he had not advised them he was coming that day. If the arranging of the loans took up too much time, it was probable Wise could not see Dexter that afternoon and still get back to Hayward. However, the accident happened about 11:30 in the morning only a few miles from Bayfield. Wise would have had ample time to see Dexter before 2 o'clock and perhaps even get back to Hayward by that time. Dexter testified he was waiting for Wise when he heard about the accident. The banker testified Wise stated to him he was going to Bayfield on business after he completed the loans. We cannot regard Dexter's testimony as being based upon conjecture and speculation.

Wise also could have been returning to Red Cliff to see John Bear again although admittedly John Bear was not an immediate prospect for a car. There is testimony of Robert Bear that Wise stated before leaving Washburn he wanted to talk to Robert Bear's father again about a car. We do not consider this testimony inherently incredible simply because it is somewhat contradictory to a previous sworn statement made by Robert Bear. It is probably true this testimony of Robert Bear, who was indebted to the deceased, should be given little weight considering also that John Bear was not an immediate prospect. However, the accident did not happen between Bayfield and Red Cliff but between Washburn and Bayfield. If the accident had occurred north of Bayfield, the appellants' argument would be more plausible and present a more-difficult case. There was sufficient credible evidence which the commission could and apparently did believe to be a basis for a reasonable inference Wise was on a dual-purpose trip in returning at least as far as Bayfield from Washburn.

The business purpose of returning was not incidental to the personal purpose of returning the students to Red Cliff.

After the loans were completed Robert Bear stated to Wise he would not have to take Kathy and him to Red Cliff because they could hitchhike, but Wise took them. We do not consider it important Wise did not tell Robert Bear he was going to see Dexter. Wise was under no duty to tell the passengers of his car his business. He did tell the banker he was going to Bayfield on business and Dexter understood Wise was probably coming before 2 o'clock and was waiting for him. This is sufficient to make the business purpose a concurrent cause and not incidental to the personal motive of returning the students to Bayfield. Considering the time of day the bank loans had been completed, the trip to see Dexter would have been made although there was no personal motive in returning the students to Red Cliff.

We conclude therefore there was sufficient credible evidence for the commission to find that at the time and place Wise was injured a business motivation existed and was a concurrent cause and that part of the trip was not a deviation. Such a finding is sufficient to sustain the determination of the commission that Wise at the time of the injury was performing services related and incidental to his employment.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.